UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MELISSA GANNETT,

                  Plaintiff,

   -v-                                              3:13-CV-717

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

LACHMAN, GORTON LAW FIRM             PETER A. GORTON, ESQ.
Attorneys for Plaintiff
57 Court Street
Plattsburgh, NY 12901

OFFICE OF REGIONAL GENERAL COUNSEL   CHARLES E. ROBERTS, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II  BENIL ABRAHAM, ESQ.
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Melissa Gannett ("Gannett" or "plaintiff") brings this action, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties

have filed their briefs as well as the Administrative Record on Appeal.[1] Oral argument was heard on December 19, 2014, in Utica, New York. Decision was reserved.

## II. BACKGROUND

Gannett filed applications for DIB and SSI claiming a period of disability beginning on July 25, 2009. R. at 97-102.[2] These applications were initially denied on March 25, 2010. Id. at 51-56. At plaintiff's request, a video hearing was held before an Administrative Law Judge ("ALJ") on May 6, 2011. Id. at 34-48. The ALJ rendered a written decision on July 25, 2011, concluding that plaintiff was not disabled within the meaning of the Social Security Act from July 25, 2009 through the date of his decision. Id. at 17-29. Plaintiff timely appealed this unfavorable disability determination to the Appeals Council.

On June 3, 2013, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Gannett's request for review. R. at 1-4. Plaintiff filed this action on June 20, 2013, seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Citations to "R." refer to the Administrative Record.

evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id.

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In

addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess

- 4 -

whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

The ALJ found that Gannett had not engaged in substantial gainful activity since July 25, 2009, the alleged onset date. R. at 22. The ALJ next found that plaintiff's bipolar disorder, personality disorder, and alcohol abuse in partial remission were severe impairments, but that this combination of severe impairments did not meet or equal any of the Listings. Id. at 22-24. The ALJ then determined that plaintiff retained the RFC to perform a full range of work at all exertional levels. Id. at 24. Specifically, the ALJ found that:

> Mentally, [plaintiff] retains the ability (on a sustained basis) to

> understand, carry out, and remember simple and some complex
> instructions; respond appropriately to supervision and co-workers
> with occasional social interaction; respond appropriately to usual
> work situations; and deal with changes in a routine work setting.

Id.

Based on these findings and Gannett's age, education, and work experience, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 28. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Id. at 29.

### D. Plaintiff's Appeal

On appeal, Gannett argues the ALJ: (1) failed to properly assess all of her severe impairments; (2) incorrectly weighed the medical opinions in the record; and (3) improperly calculated her RFC.

#### 1. The ALJ's Step Two Determination

The ALJ found that Gannett's bipolar disorder, personality disorder, and alcohol abuse in partial remission were severe impairments. Plaintiff argues her kleptomania, learning disability, and insomnia are also severe. Pl.'s Mem., ECF No. 11, 9-10.

At Step Two, the ALJ must determine whether a claimant has a severe impairment that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). Examples of basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remember simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations." Zenzel v. Astrue, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.) (citation omitted) (adopting Report & Recommendation of Bianchini, M.J.)

- 6 -

Importantly, the claimant bears the burden of presenting evidence establishing such severity. Zenzel, 993 F. Supp. 2d at 152. And while the Second Circuit has held that this step is generally limited to "screen[ing] out de minimis claims," the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is insufficient to render a condition "severe." Id. (citations omitted).

### i. **Kleptomania**

First, Gannett asserts her kleptomania is a severe impairment because "[a] person who has a history of being terminated because of her uncontrollable urges . . . is not like[ly] to be able to maintain regular employment." Pl.'s Mem. at 10.

Even accepting this argument as true, it is unavailing here. Gannett does identify a September 2009 treatment record diagnosing her with kleptomania and noting that she was fired from her last job "due to stealing food in the cafeteria." R. at 221. But merely establishing a diagnosis is insufficient to render a condition severe. Zenzel, 993 F. Supp. 2d at 152. A claimant bears the further burden of presenting evidence establishing how this impairment significantly limits her ability to do basic work activities. Id.

Gannett has not done so here. There is no evidence recounting a history of job terminations stemming from her kleptomania. Nor is there evidence otherwise demonstrating, either directly or indirectly, significant limitations associated with plaintiff's kleptomania that would render this condition "severe" within the meaning of the regulations. Plaintiff's further assertion—that the ALJ misunderstood her kleptomania as "bad behavior"—is similarly unavailing. Pl.'s Mem. at 10. The ALJ's discussion on this point contains citations referencing plaintiff's alcohol consumption and DWI conviction, not her kleptomania. R. at 221, 409. Accordingly, the ALJ did not err in failing to find her

kleptomania "severe."

### ii. **Learning Disability**

Next, Gannett argues that she has a severe learning disability. Pl.'s Mem. at 11. Plaintiff identifies a January 2000 psychological evaluation noting "she was diagnosed as suffering from a learning disability" in the fourth grade. R. at 336. Plaintiff focuses on this psychological evaluation because it places her in the "low average" range of intellectual functioning. Id. at 338. She also points to evidence detailing her history of educational accommodations as well as treatment records noting her difficulties with concentration and attending to tasks. Pl.'s Mem at 11.

A review of the challenged portion of the ALJ's decision, which employs the "special technique" for evaluating mental impairments required by the regulations, reveals no basis for remand. The ALJ acknowledged all of the evidence plaintiff points to here, including the January 2000 assessment's findings, which notably concludes that plaintiff's academic skills are "generally adequate." R. at 340. In addition, the ALJ also noted plaintiff's successful completion of a four-year college degree in health science, her current enrollment in a nursing program, and treatment records during the onset period indicating that plaintiff's intelligence was "average." R. at 23-24. On this basis, the ALJ concluded that the evidence "as a whole" did not support a finding of severity. Id. at 24.

Gannett attempts to re-cast these facts as evidence of severity, arguing that her completion of a four-year college degree reinforces her allegations of a learning disability because it took her twelve years to complete a bachelor's degree. Pl.'s Mem. at 12. But the mere fact plaintiff only takes classes part-time and has a "history of signing up for a full semester of courses" and then "drop[ping] several of the classes" is not per se evidence of

- 8 -

impairments stemming from a learning disability.  Rather, a review of the medical evidence suggests this erratic behavior is causally related to plaintiff's bipolar disorder, a conclusion the ALJ shared.  This is evidenced by, among other things, his finding that plaintiff's bipolar disorder was a "severe" impairment warranting further analysis.  Where, as here, such evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  Rutherford, 685 F.2d at 62.

### iii. Insomnia

Finally, Gannet contends that her insomnia is a severe impairment because it caused a lack of energy, difficulty staying on task, forgetfulness, and difficulty concentrating.  Pl.'s Mem. at 13.  But although there are various references in the record to a diagnosis of "insomnia" or ongoing "trouble sleeping," the treatment records plaintiff identifies in support of this argument do not associate these disorders with her concentration issues and forgetfulness.  Rather, these records consistently identify plaintiff's bipolar disorder, which the ALJ found to be severe, as the cause of these problems.  See id. (citing e.g., R. at 226, 250, 309, 312, 332, 337, 350).  As noted above, merely being diagnosed with an impairment does not render it severe.  Zenzel, 993 F. Supp. 2d at 152.

### 2. Medical Opinions

Gannett next challenges the ALJ's assessment of the various medical opinions in the record.

### i. Sarah Harding, LCSW[3]

First, Gannett claims the ALJ improperly afforded "limited weight" to the medical

---

[3] Sarah Harding's surname was initially "Miles," a fact which caused the ALJ some confusion.

- 9 -

opinions of Sarah Harding, a licensed clinical social worker with whom plaintiff consistently treated. Pl.'s Mem. at 13. Although social workers are not considered "acceptable medical sources," their opinions should nevertheless be considered in evaluating a claimant's impairments. Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.).

Gannett identifies a March 31, 2011 questionnaire completed by Ms. Harding which indicates plaintiff has a number of "medium" limitations in mental functioning, with only her ability to complete a normal work week identifies as "marked." R. at 416-18. This questionnaire defines "marked" as an area of "serious limitation" that causes a "substantial loss" in the ability to function. Id. at 416. However, as the ALJ notes and the Commissioner explains, this finding is unsupported by Ms. Harding's progress notes, which reflect a series of "relatively normal mental status examinations with reported improvement in [ ] symptoms." R. at 25.

It is also rebutted by other record evidence. For instance, although Gannett claims the ALJ completely failed to consider the findings of Mahfuzar Rahman, M.D., a staff psychiatrist at Broome County, the ALJ's decision actually cites some of Dr. Rahman's treatment notes, including one noting plaintiff's Global Assessment Functioning ("GAF") score between 55 and 65, a result indicative of only "moderate" symptoms. R. at 25 (citing R. at 219).

Further, to the extent Ms. Harding renders opinions to the effect that "employment could exacerbate [Gannett's] symptoms" and she should therefore "refrain from finding employment," those are statements on an issue reserved to the Commissioner—namely, the determination or decision of disability. Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (Sharpe, J.). In sum, the ALJ properly recognized Ms. Harding's status as an "other source" under the regulations and, after analyzing the substance of her

opinions, afforded her only "limited weight."

### ii. Gary D. Dean, M.D.

Next, Gannett contends the ALJ improperly gave "little weight" to a March 12, 2010 letter by Gary D. Dean, M.D., which notes that plaintiff has had "significant difficulty attending to tasks, following through, continuing job performance, and continuing her college education because of her bipolar illness." Pl.'s Mem. at 18-19 (citing R. at 226).

The opinion of a treating physician, such as Dr. Dean, is entitled to controlling weight unless it is unsupported by the medical evidence or is inconsistent with other substantial evidence in the record. Balodis v. Leavitt, 704 F. Supp. 2d 255, 264-65 (E.D.N.Y. 2010). Where, as here, the ALJ decides against giving the opinion of a treating physician controlling weight, he must "give good reasons in his notice of determination or decision" for the weight he ultimately chooses to assign. Id. (citations omitted).

Here, the ALJ gave "little weight" to Dr. Dean's letter because he found it was superseded by Dr. Dean's later medical source statement, dated July 2010, which indicates Gannett has no trouble understanding, remembering, or carrying out instructions, no problems interacting appropriately with co-workers and the public, and no problems responding to changes in a routine work setting. R. at 331-32. This statement also notes that plaintiff's ability to concentrate, stay on task, and complete work is affected by her disorder, but does not indicate the significance of this limitation. Id. at 332. The ALJ gave "great weight" to this later statement by Dr. Dean, noting its consistency with his more recent treatment notes indicating plaintiff was doing "pretty well" and that, despite the necessity of ongoing treatment, there were "no major issues or concerns." Id. at 347.

Although an ALJ may not reject a treating physician's opinion based "solely" on

internal conflicts in clinical findings, he must nevertheless "weigh all of the evidence and make a disability determination based on the totality of that evidence." Barringer, 358 F. Supp. 2d at 80 (citation omitted); see also Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (summary order). The ALJ satisfied his obligation here—he explained the weight accorded to Dr. Dean's opinions, articulated an acceptable rationale for discounting the March 2010 letter, and identified conflicting record evidence, such as the opinion of the state agency medical consultant, in making his ultimate conclusion.

### iii. State Agency Medical Consultant

Finally, Gannett claims the ALJ erred in also giving "great weight" to the opinion of state agency medical consultant L. Blackwell, Ph.D, who rendered her opinion in March 2010, before a "significant portion of [plaintiff's] mental health treatment [ ] occurred." Pl.'s Mem. at 21.

"State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." Barringer, 358 F. Supp. 2d at 79. Gannett seems to take issue with the reliability of Dr. Blackwell's March 2010 opinion while simultaneously endorsing Dr. Dean's March 2010 letter—both rendered before a significant portion of plaintiff's medical treatment occurred. It is true that Dr. Blackwell reviewed plaintiff's file while she continued a course of ongoing mental health treatment, but there is nothing per se objectionable about that fact. Plaintiff's argument on this point would be more persuasive if, as in other cases, the ALJ had chosen to rely solely on a state agency medical opinion while completely discounting conflicting opinions rendered by other treating sources. For example, the Second Circuit has identified error where a non-examining consultant's opinion, based on

only a partial medical record, was used to override a treating physician's entire opinion. E.g., Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 (2d Cir. 2010) (summary order).

But that is not the case here. The ALJ's written decision indicates that he considered and assigned weight to the opinions of Gannett's treating sources, as well as Dr. Blackwell's opinion, as part of his narrative discussion.

### 3. **RFC Determination**

Lastly, Gannett contends the ALJ's RFC determination is deficient in two respects. First, plaintiff argues that the evidence "supports a finding that [she] has significant limitations in her abilities to concentrate, stay on task, and remember." Pl.'s Mem. at 22. Second, plaintiff asserts the ALJ failed to consider her "episodic" inability to work on a regular and continuing basis. Id. at 23.

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making this determination, the ALJ must consider a plaintiff's "physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." Judge v. Comm'r of Soc. Sec., No. 12-CV-482 (GLS/VEB), 2013 WL 785522, at *3 (N.D.N.Y. Feb. 1, 2013) (Bianchini, M.J.) ((citing 20 C.F.R. § 404.1545(a)) (Report & Recommendation), adopted by 2013 WL 785641 (N.D.N.Y. Mar. 1, 2013) (Sharpe, C.J.).

At oral argument, Gannett's counsel clarified this first challenge by asserting that the ALJ's reliance on Dr. Blackwell's opinion, rendered on an incomplete medical record, cannot constitute "substantial evidence" and therefore his finding of "no diminishment of function" in plaintiff's RFC was error. But this argument does not meet the threshold necessary for reversing the Commissioner's determination, which limits a reviewing court to determining only whether the challenged decision is supported by substantial evidence and whether the correct legal standards were applied. Poupore, 566 F.3d at 305. Although plaintiff undoubtedly identifies some evidence in support of her position, the ALJ applied the correct legal standards in reaching his conclusion which, as previously discussed, included assigning weight to various medical opinions in the record, including the opinions of Dr. Blackwell, Dr. Dean, and social worker Harding.

Gannett's second assertion is that the ALJ failed to understand the affect her "likely absenteeism" would have on her ability to work on a regular and continuing basis. Pl.'s Mem. at 23. Plaintiff identifies a questionnaire completed by social worker Harding which indicates plaintiff would reasonably be expected to miss work two to three times per month.[4] R. at 417.

Gannett correctly notes that, where an ALJ finds limitations in a claimant's ability to perform in a work setting, he must also consider the effect of a claimant's actual or likely absenteeism on her ability to perform work with reasonable regularity. See, e.g., Beck v. Colvin, 2013 WL 5533571, at *4 (W.D.N.Y. Oct. 7, 2013). Plaintiff also correctly notes that

---

[4] Gannett also identifies a June 11, 2012 questionnaire completed by Dr. Dean that reaches a similar conclusion. However, the ALJ's written decision was issued on July 25, 2011, nearly eleven months earlier. Plaintiff does not urge remand for additional proceedings based on this later-rendered opinion. In any event, remand on this basis is unnecessary because it would not have been reasonably likely to compel a different outcome. Seignious v. Astrue, 905 F. Supp. 2d 459, 463 (W.D.N.Y. 2012).

- 14 -

vocational experts in other cases have opined that missing three or more days of work per month may render a claimant unemployable. Id. And in a similar vein, courts have held that the mere ability to complete college course work is not necessarily equivalent to the ability to satisfactorily complete full-time work within the meaning of the regulations. Id.

Nevertheless, the ALJ did not err in this respect. As discussed above, the ALJ properly weighed the medical opinions of record and, in particular, only afforded "limited weight" to Ms. Harding's opinions before ultimately concluding, after a thorough narrative discussion, that Gannett did not suffer such limitations in her ability to perform in a work setting. R. at 24.

But even accepting Ms. Harding's conclusion wholesale, it only suggests total monthly absences that may reach this three-day-per-month threshold. Gannett does not identify, and the record does not reveal, any medical opinion properly before the ALJ beyond this single questionnaire by Ms. Harding which suggests this level of absenteeism. Of course, an ALJ is not required to discuss every piece of evidence in the record or reconcile every inconsistency in the record. Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). And to the extent plaintiff argues that this likely absenteeism may be inferred from her academic records and other performance, the conclusions she urges are at odds with the ALJ's own conclusions—conclusions he drew after a detailed consideration of the same academic records, ongoing treatment notes, and medical opinions.

Indeed, a review of the ALJ's thorough written decision indicates an awareness of Gannett's shifting, episodic symptomatology and an understanding of the limits and effect of plaintiff's ongoing treatment and improving status, albeit in a "two steps forward, one step back" fashion. Although plaintiff identifies some evidence to support her own arguments, the

ALJ was well within his province to conclude, as he did, that there was substantial evidence that plaintiff was "limited, but not disabled, by her psychological impairments." R. at 27.

IV. **CONCLUSION**

After reviewing the entire record, including the briefs, ALJ's decision, transcript of the hearing, medical records, and other evidence, the Commissioner's decision is not based on legal error and ample evidence exists in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion." Richardson, 402 U.S. at 401.

Therefore, it is

ORDERED that

1. Gannett's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Gannett's complaint is DISMISSED.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

United States District Judge

Dated: December 23, 2014
Utica, New York.